Please rise. This court is now in session. Please be seated. 311 of 381 people of the state of Illinois, I believe. Okay, Mr. Green. May it please the court. My name is Tiffany Boyd Green from the office of the state appellate defender and I represent Douglas Oaks in this matter. Today I'm going to be focusing my argument on the eligibility portion of Issue 1 and on Issue 3 with respect to the Council of Choice issue. Of course I can answer questions on any of the issues. Our first issue is that trial counsel was ineffective for failing to investigate and present evidence of Mr. Oaks' horribly abusive childhood, which was relevant to the eligibility phase of sentencing. At the evidentiary hearing, Judge Stengel heard evidence of the extreme physical abuse that Douglas Oaks suffered throughout his childhood and adolescence. The examples are too many to discuss here, but they are detailed in our briefs. After listening to this testimony from the different witnesses, Judge Stengel found that Mr. Oaks had suffered through a horrible, horrible existence as a child and adolescent. And he further found that trial counsel's performance was deficient in light of his failure to investigate any of the childhood abuse before making strategic choices. However, he found that there wasn't any prejudice to Mr. Oaks. We're asking that this court review his legal findings de novo under an objective test to find that Mr. Oaks was prejudiced by trial counsel's failure to present this evidence. Knowing the details about Mr. Oaks' horrific childhood was absolutely relevant to whether or not Mr. Oaks was eligible for the death penalty, because it would have affected the way that the judge viewed the evidence in the case and also Mr. Oaks' state of mind at the time of the offense. In order to be found eligible for the death penalty or for a life sentence, the sentencing court needed to find that Mr. Oaks' actions in causing Jerry Nelson's death were exceptionally brutal and heinous, indicative of wanton cruelty. The case also established that the defendant's state of mind and his background were relevant in making this determination. Brutal has been defined as grossly ruthless, devoid of mercy or compassion, cruel and cold-blooded. Heinous has been defined as hatefully or shockingly evil, grossly bad. And wanton cruelty requires proof that the defendant consciously sought to inflict pain and suffering on the victim. All of those definitions go to Mr. Oaks' state of mind at the time of the offense. Evidence of his abusive upbringing at the eligibility phase of sentencing would have shown the sentencing court that Mr. Oaks didn't have the mental state required at the time of his actions in causing Jerry Nelson's death. Had the sentencing court known about the cruel treatment that Mr. Oaks endured on a regular basis, and that he viewed as a way of life, he wouldn't have seen Mr. Oaks' actions as cruel and cold-blooded or shockingly evil or intentionally seeking to inflict pain and suffering onto Jerry Nelson. He was just acting in the way that he had been treated as a child and that he saw his parents treating him and his siblings. He thought it was how you discipline a child. In fact, there was evidence at the evidentiary hearing that Mr. Oaks never seemed to think there was anything wrong with the horrible treatment he received from his parents. He never complained about his treatment and only made him try and please his parents more. His siblings, by comparison, ran away at an early age or lived with neighbors. Mr. Oaks didn't do any of that. He simply stayed at home and continued to try and please his parents and gain their love and acceptance. He viewed physical discipline as a way of showing a child how to do better or encouraging a child to do better. He really didn't have the state of mind required when you look at what's considered shockingly evil, intentionally seeking to inflict pain and suffering or cruel or cold-blooded. Assuming that we would agree with you on that, like the trial court in some ways, how do we procedurally get there? What I'm speaking to is how do you respond, I guess, to counsel's discussion of Mata, Adkins, Miller? Well, as you know, this court sends it back under Mata for determining whether or not... But how does Adkins affect Mata? I don't think it affects it at all because in Adkins, that defendant still had a life sentence. I mean, I'm sorry, still had a death sentence at the time that that opinion came down. So Adkins doesn't deal with mootness. Mata deals with whether or not eligibility issues become moot upon commutation of a life sentence. That's not what Adkins deals with. So it's our position that it doesn't affect it at all. And at this point, this court could remand Mr. Oakes' case for further sentencing proceedings. If this court were to determine that these factors are indeed relevant to eligibility, he could have another eligibility hearing and further sentencing proceedings. So if this court doesn't have any other questions on this issue, I'll just conclude with the fact that if the defense attorney at the time of trial had investigated this evidence of child abuse and presented it to the sentencing court at the time of the eligibility determination, there's a reasonable probability that a sentencing court would not have found that Mr. Oakes was eligible under the exceptionally brutal and heinous indicative of wanton cruelty. If a person lived in an environment where there was constant murder, you thought murder was acceptable, you're saying that goes to the state of mind then? That that kind of person could never have the right state of mind? I think you have to look at the situation here. I think each case would be different. But here, we're looking at the situation that Mr. Oakes was presented with. He had a child who wasn't behaving, and he reacted in a way that was, quite frankly, much less severe than his parents had treated him. He had been the victim of abuse much worse than what occurred in this case. So I think you have to look at the situation. Of course, you can say, oh, well, it's always okay, or it excuses everything. We're not saying it's okay. But there was a murder here, and there's no doubt about that. But what we're saying is that there wasn't that additional requirement that this court needs to find. It was exceptionally brutal and heinous indicative of wanton cruelty. He didn't have that intent to inflict pain and suffering. He was simply reacting in a way that he had been taught to act. So it goes to his state of mind to determine whether or not he is subject to this. I mean, it seems to me that that evidence could go both. You could argue that it goes to aggravating factors, that here's a person that, because of their background, could be extremely dangerous. Well, there was no evidence in the record that he was some ruthless, cruel individual to children. In fact, I think there was evidence that he, for the most part, was very good to his daughter and other children in the family. It's not inherently aggravating that he was raised in an abusive environment, and courts have considered it to be mitigating evidence in the past. Our second issue is that the circuit court abused its discretion when it denied Mr. Oaks the opportunity to file a supplemental claim about Appellate Counsel's ineffectiveness. In his pro se petition, Mr. Oaks had raised the meritorious claim that Appellate Counsel was ineffective for failing to argue that Mr. Oaks was denied his success to counsel of choice at the time of trial. Mr. Oaks has both the right to counsel of choice and the right to present witnesses necessary to the defense. And at the time of trial, the trial court refused to grant funds to pay for expert witnesses necessary to the defense because he erroneously believed that Mr. Oaks could not be considered indigent because his family had hired an attorney for him. So based on that, his attorney was forced to withdraw to allow Mr. Oaks to have access to the witnesses he needed in order to prepare a defense. It was an abuse of discretion for the circuit court to deny him the leave to file a supplemental petition raising this claim because there wouldn't have been any prejudice to the state, and the state isn't claiming there would have been any prejudice if Mr. Oaks had been allowed to file this claim. The Post-Conviction Hearing Act allows for the filing of supplemental claims up until the time that there is final judgment in the case. Well, what's it mean in this record? In the context of this record, what does it mean to be too late in the game? Well, I think that there were... But that's a quote, isn't it? It is a quote. That is what Judge Stengel said, and I think there were a couple things going on. One, he believed that the issue was res judicata with respect to the choice of counsel issue. He thought that this had already been litigated, but that was inaccurate. This issue was in the pro se petition, but it had not been included in the amended petition filed on his behalf. So he erroneously believed that it had already been litigated and he didn't have the discretion to allow Mr. Oaks to file this claim. And that erroneous belief that he didn't have discretion alone is an abuse of discretion. Additionally, I think that he thought that this case had been remanded by this court for consideration of certain claims as they related to eligibility and sentencing, but this court's mandate didn't limit him to only those things. It said what the court needed to look at upon remand, but there were other things that the circuit court was able to do once it had the case back on its docket. It was able to exercise discretion in all the ways that it normally could, including allowing for the filing of a supplemental claim. So I think that when Judge Stengel said it's too late in the game, he was referring to both of those things. And the state doesn't really contest your second argument that the right to counterclaim wasn't litigated, right? Correct. Correct. There's no doubt it wasn't in the amended petition and it wasn't raised in the direct appeal. So it had not been litigated? Correct. Correct. And additionally, because this claim involves purely a legal issue, we would ask that this court decide the issue on the merits because there's really no point in remanding it. The attacks are in dispute. Everything is in the record. Rather than remand it? Right. Correct. We would ask that this court just decide the issue on the merits. It's been briefed in the briefs file before this court, and there's no additional fact-finding that needs to occur that would require a remand. If there's no further questions? Thank you. Thank you very much, Ms. Green. Ms. Duffy? Good afternoon, Your Honors. Counsel? In our brief, we have asked this court to decide whether or not the sentencing issues presented by this defendant are moot. We submit that they are, and that that issue remains viable in this court based upon its order remanding the case for an evidentiary hearing. I think the argument in the State's brief makes it clear that this case does not fall under the dictates of MOTA. It falls under the dictates of those multiple, multiple cases cited in MOTA. One thing I didn't hear counsel mention when she was up here today is that this defendant appealed his death sentence to the Illinois Supreme Court in 1996. They found that the State had proven beyond a reasonable doubt that the defendant's actions, that this offense was committed and that the actions were brutal and heinous, indicative of wanton cruelty, justified the imposition of the death sentence. That was in 1996. Subsequently, the governor commuted the defendant's sentence to life imprisonment. That is an executive sentence. Whether or not any court after that has the authority to modify that sentence is an issue that the defendant has not grappled with. I can't find any authority that says that a court may do that. With the exception of MOTA, although they didn't modify the sentence, this is what makes that case different. Defendant MOTA was convicted and sentenced to death. While her case was pending on direct appeal, the governor commuted her sentence to life imprisonment. She wished to raise the issue of whether or not the aggravating factor that was used to impose the death sentence was proven beyond a reasonable doubt. The Supreme Court said you have the right to judicial review of that issue. But this defendant had judicial review of that issue in 1996. Surely mootness and race judicata have got to be addressed in this case. As to the issues that the defendant presents, I dispute their argument that the standard of review after an evidentiary hearing and a post-conviction proceeding is a bifurcated one. The case that they cite for that and the case it relies upon clearly shows that the case relied upon by Watson's People v. Bailey Second District case, that case dealt with a review of a motion to suppress. I'll grant you that in a motion to suppress and on appeal of that, there is a bifurcated review. That the legal issues that are decided are de novo, but deference is given to the trial court's finding of fact. That is not what the standard of review is after an evidentiary hearing and a post-conviction proceeding. Under these circumstances, our Supreme Court has said that you do not disturb the judge's decision unless it's manifestly erroneous, period. The defendant also has argued that Judge Stengel based his finding that the defendant was not prejudiced by the exclusion of evidence of his horrific boyhood at the penalty phase proceedings in this case. I would point out that they argue that Judge Stengel based his finding on what Judge O'Connor had found at the time instead of coming up anew with a judgment merely repeating what Judge O'Connor had said. I think it's pointed out in the brief that the question before the court was whether there was a reasonable probability that absence of any errors or omitting this evidence that the trial judge would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. When you do that, Judge Stengel reviewed what Judge O'Connor said because Judge O'Connor was the trier of fact. He didn't just repeat his prior ruling and adopt it as his own, and I think that's evidence in his written order where he specifically finds that while the trial attorney's performance was deficient in not investigating the child abuse of the defendant, the defendant was not prejudiced by this deficiency. There's nothing that they have argued today, nothing in this record, to show that that conclusion is against the manifest weight of the evidence. On this last issue of filing subsequent claims, I would point out that this court's order of remanding said that it was remanding for an evidentiary hearing on defendant's issues in his petition, issues 1, 10, and 11. The defendant did not argue issues 1 and 11, only issue 10, which we just discussed. The trial court was without authority to do anything outside the scope of this court's mandate. That would have included considering other issues, but aside from that, it's within his discretion, if he had authority to do it, whether or not to allow subsequent post-conviction claims. I'm sure this court's well aware of the fact that defendants don't have the right to subsequent post-conviction petitions. They have the right to one. It's their burden to show why those claims should be considered by the trial court, and the defendant presented nothing to show why the trial court should consider those issues. Other than that, I would stand on the arguments that people have made in their brief. We'll share any questions. Thank you. Ms. Duffy and Ms. Green, do you have any rebuttal? Just a few points, Your Honors. Counsel had pointed out that this case had already been litigated in the Illinois Supreme Court regarding the exceptionally brutal and heinous indicative of warranted cruelty. However, this claim that is now before this court is based on an ineffective assistance of counsel claim for failure to bring certain evidence, here evidence of the abuse of childhood. While the Illinois Supreme Court did review that finding of the sentencing court, it did so without the benefit of the new evidence which came in at the evidentiary hearing. Additionally, I want to point out that unlike Adkins, the constitutional issues here stem from an ineffective assistance of counsel claim under Strickland v. Washington, so that further distinguishes Adkins from Mr. Oaks' case. Does Miller affect this? No, because in Miller the defendant had a mandatory life sentence, so it's unlike Mr. Oaks' case where he would be eligible for a term of years. Additionally, counsel notes Judge Stengel's findings where he talks about what Judge O'Connor would have found in that case, and counsel is conceding that he applied a subjective test, and that's not the standard. The standard is an objective test, not what a particular judge would have done, not what Judge O'Connor would have done, but what an objective sentencing court would have found. Additionally, when counsel was talking about the trial court's discretion to allow Mr. Oaks to file supplemental claims, the standard she was speaking of sounded more like what would be applied to a successive post-conviction petition. Here, the judge had the authority to allow him to file a supplemental claim. As long as it's not going to prejudice the state or cause unnecessary delay, he should exercise his discretion liberally in that case if it's in the interest of justice, and here it is in the interest of justice. Mr. Oaks included this claim in his pro se petition. He had asked from a very early point that this be included and that this be decided, but it was omitted for reasons we don't know from the amended petition, so in the interest of fairness, he should have a chance to have that issue decided by a court. If there are no further questions, we'll conclude. Thank you, Ms. Green, and thank you both for your argument today. We will take this matter under advisement. We'll now take a short recess for panel discussion.